FILED

2021 Jun-16  PM 01:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RONALD KING, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19-CV-01115-KOB** |
| | ) | |
| **UA LOCAL 91, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This employment discrimination case returns to the court on a second round of motions to dismiss. All three Defendants have moved to dismiss on various grounds, and Defendant Day and Zimmermann NPS, Inc. (D&Z) has moved to sever the five named Plaintiffs (Ronald King; Anthony Robinson; Chris Samuel; Nolan Jones, Jr.; and Brian Struggs) from each other and to sever D&Z from the two Union Defendants: the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada; and its local affiliate, UA Local 91.

In the first round of motions to dismiss, the court dismissed without prejudice the Plaintiffs' First Amended Complaint as to D&Z on "shotgun" pleading grounds and struck the Plaintiffs' class allegations. (Doc. 43; 44). The court's Memorandum Opinion (doc. 43) explained the First Amended Complaint's deficiencies. Because the Plaintiffs failed to cure the deficiencies present in their disparate impact (Count IV) and disparate treatment (Count V) claims against D&Z, the court will **GRANT IN PART** and **DENY IN PART** D&Z's motion to dismiss (doc. 62) on shotgun pleading grounds and will **DISMISS** Counts IV and V **WITH PREJUDICE**. The court will **DENY** D&Z's motion to dismiss as to Count VI.

1

The court will also **GRANT** UA Local 91's motion to dismiss (doc. 60) on shotgun pleading grounds and will dismiss Counts I and II **WITHOUT PREJUDICE**. The court will **GRANT LEAVE** to the Plaintiffs to replead Counts I and II against the Union Defendants.

Additionally, the Plaintiffs realleged their class claims against only the Union defendants in the Second Amended Complaint. But because the Plaintiffs did not have permission to reallege those class claims and, in any event, have not sufficiently distinguished the class claims against the Unions from the class claims that the court previously struck, the court will **GRANT** the UA International's and UA Local 91's motions to dismiss the class allegations (doc. 59; 60) and will **DISMISS** the class allegations against the UA International and UA Local 91 **WITH PREJUDICE**.

And finally, because the parties stipulated to the dismissal of Count III (retaliation against the Union Defendants) with prejudice, the court will **DISMISS** Count III **WITH PREJUDICE**. The court will **DENY** the UA International's motion to dismiss (doc. 59) **WITHOUT PREJUDICE** as **MOOT** and will **DENY** D&Z's motion to sever (doc. 62) **WITHOUT PREJUDICE**.

## I.    Factual and Procedural Background

### A.    Factual Background

The court discussed the facts of this case at length in its prior memorandum opinion (doc. 43), so it will only briefly discuss the facts for purposes of this opinion. The five named Plaintiffs are all African-American members of both the UA International and the UA Local 91, and all five named Plaintiffs obtained employment as Journeymen with D&Z through Union referrals. (Doc. 50 at 3, 6). The crux of the Plaintiffs' Second Amended Complaint is that African-American Union members did not work in leadership positions on D&Z jobs—including

foreman, general foreman, and superintendent—at the same rate as white Union members. (Doc. 50 at 3, 25, 27, 37). And although the Second Amended Complaint states that all Plaintiffs worked as Journeymen for D&Z, the Plaintiffs also claim that the Unions and D&Z discriminated against them in providing Journeyman and Apprenticeship employment opportunities. (Doc. 50 at 26, 49).

Defendant D&Z provides seasonal and temporary maintenance work to power plants and obtains its workforce for craft positions solely through Union referrals pursuant to its Union contracts. (Doc. 50 at 5, 34–35). When D&Z needs workers, it sends a "manpower request" to the applicable Unions which in turn submit a "referral list" to D&Z containing the names of certain Union members who will work for D&Z on the project. (Doc. 50 at 7, 36). The applicable Union may also "nominate" certain of its members to serve as foreman, general foreman, or superintendent on the D&Z project. (Doc. 50 at 7, 36). If the applicable Union does not "nominate" one of its members to serve as a foreman, general foreman, or superintendent on a D&Z project, then D&Z may "step up" a member on the Union's referral list to fill that position. (Doc. 50 at 7, 36).

Importantly, according to the Plaintiffs, "[t]he referral and selection process for both leadership and journeymen positions *occurred separately for each outage or project that D&Z staffed*." (Doc. 50 at 8) (emphasis added). Notably, the Second Amended Complaint does not allege that a sole Union decisionmaker referred Union members to D&Z leadership positions, nor does the Second Amended Complaint allege that a sole D&Z decisionmaker made "step up" decisions when necessary.

The Second Amended Complaint does not clearly set out the hiring or selection processes either D&Z or the Union defendants used to place Union members in leadership positions on

D&Z jobs. The Second Amended Complaint states, for example, that "D&Z has informed the Plaintiffs that the factors utilized to select foremen and general foremen are 'leadership, prior experience, and absenteeism.'" (Doc. 50 at 8). But the Second Amended Complaint does not indicate whether only D&Z, only the Unions, or both D&Z and the Unions used these selection criteria in filling leadership positions. Likewise, the Second Amended Complaint alleges that "[r]eferrals and appointments of foremen and general foremen were also based on nepotism practices" that favored white Union members without specifying which actors engaged in these practices. (Doc. 50 at 10, 30).

The Second Amended Complaint only unambiguously attributes two employment practices to particular actors: the Plaintiffs allege that neither D&Z nor the Unions posted or announced vacancies for leadership positions and instead filled those positions through word of mouth (doc. 50 at 13, 39); and that UA Local 91 hung a Confederate Flag in its meeting hall. (Doc. 50 at 36).

Instead of clearly articulating which actor utilized most of the challenged employment practices, the Plaintiffs impute *all* conduct to *all* defendants through allegations of "joint and several liability." (Doc. 50 at 36, 55). And as to the *International Union*, the Plaintiffs allege only that Local 91 acted as the "subsidiary, affiliate and/or agent of its parent International Union[,]" a relationship that Plaintiffs allege supports the International Union's liability for the actions of Local 91. (Doc. 50 at 3).

Finally, Plaintiffs Chris Samuel and Nolan Jones, Jr. allege that D&Z retaliated against them for filing EEOC charges related to this case. (Doc. 50 at 60). According to Plaintiff Samuel, D&Z fired him as *foreman* on a jobsite because "he had recently filed EEOC charges that opposed racial discrimination…." (Doc. 50 at 61). And Plaintiff Jones claims that D&Z

4

"suspended and/or terminated him" after filing EEOC charges. (Doc. 50 at 64). Interestingly, however, the retaliation claim muddies the waters even more regarding the methods by which leadership positions at D&Z jobsites were filled. According to Plaintiff Samuel's and Jones's retaliation claim, "the general foreman had always selected the foremen under them," but a D&Z supervisor intervened to remove Plaintiff Samuel as foreman after he filed EEOC charges in an exception to this customary practice. (Doc. 50 at 61).

### B.    Procedural Background

As explained above, defendant D&Z previously filed a motion to dismiss, which the court granted. (Doc. 43; 44). But importantly for purposes of these motions, the Union defendants did not join in D&Z's motion to dismiss; instead, the Union defendants filed answers to the First Amended Complaint. *See* (Doc. 34) (UA International's answer); (doc. 36) (UA Local 91's answer).

The court dismissed the Plaintiffs' First Amended Complaint (doc. 30) on impermissible shotgun pleading grounds as to D&Z only. (Doc. 43 at 31). The court concluded that the First Amended Complaint constituted an impermissible shotgun pleading because "not all potential Plaintiffs, as described in the class definition, were or are associated with both groups of Defendants; because not all claims appl[ied] to both groups of Defendants; and because the Amended Complaint [was] vague as to which allegations appl[ied] to which Parties[.]" (Doc. 43 at 11). The court also noted that "the Plaintiffs fail[ed] to specify *which* Defendant(s) placed the individuals in their positions." (Doc. 43 at 10) (emphasis in original).

The court also struck as implausible Plaintiffs' class allegations. The court held that the Plaintiffs' proposed class failed to satisfy any of Fed. R. Civ. P. 23's requirements. (Doc. 43 at 15–30). As to Rule 23(a)(2)'s commonality requirement, the court held that the proposed class

failed to satisfy that Rule as interpreted by the Supreme Court of the United States in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). (Doc. 43 at 24). The court held that, like the plaintiffs in *Dukes*, the Plaintiffs in this case sought to certify a class founded only upon allegations that D&Z "engaged in a variety of discretionary, *ad hoc*, and subjective behaviors which provide[d] 'no cause to believe that all their claims [could] productively be litigated at once[.]'" (doc. 43 at 24).

The court then held that even if the Plaintiffs had plausibly alleged a certifiable class under Rule 23(a), they had not done so under either Rule 23(b)(2) or 23(b)(3). As to Rule 23(b)(2), the court pointed out that the class was uncertifiable "by the very terms of Plaintiffs' demanded remedies" because that Rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant or when each class member would be entitled to an individualized award of monetary damages." (Doc. 43 at 25) (citing *Wal-Mart*, 564 U.S. at 360–61) (internal alterations omitted). Because the Plaintiffs sought individualized money damages in their First Amended Complaint, the court refused to certify their proposed class under Rule 23(b)(2).

And as to Rule 23(b)(3), the court refused to certify the class under that Rule because Plaintiffs' individual questions of liability and individual claims for money damages predominated over common questions. (Doc. 43 at 30). As to the Plaintiffs' disparate impact claim, the court noted that the Plaintiffs had "failed to demonstrate the existence of a facially neutral policy common to all proposed class members." (Doc. 43 at 29). And for purposes of Plaintiffs' disparate treatment claim, the court found that "every new Plaintiff would necessarily

6

require additional evidence regarding the context of each choice a Defendant's supervisor or manager made in selecting someone else for every position, thus requiring the court to consider the circumstances surrounding each of thousands of placement decision made by an unstated but certainly high number of decisionmakers over the course of a decade." (Doc. 43 at 30).

Against this factual and procedural background, the Plaintiffs bring disparate impact (Count I) and disparate treatment (Count II) claims against the Union Defendants individually and on behalf of a putative class of African-American Union members. (Doc. 50 at 19, 25–30). In their individual capacities only, the Plaintiffs bring disparate impact (Count IV) and disparate treatment (Count V) claims against D&Z. (Doc. 50 at 34–60). And Plaintiffs Samuel and Jones jointly bring a single claim of retaliation against D&Z (Count VI). (Doc. 50 at 60–64).

The Plaintiffs, both individually and on behalf of their putative class, seek a variety of equitable and monetary relief. They seek (1) back pay, plus interest; compensatory and punitive damages; attorneys' fees, costs, and expenses; (2) a declaratory judgment that "D&Z and/or the Defendant Unions' employment practices…are illegal and in violation of Title VII and 42 U.S.C. § 1981;" (3) a preliminary and permanent injunction prohibiting D&Z and/or the Unions from continuing to violate those statutes; (4) "[a]n order restoring the named Plaintiffs and the class they seek to represent to the jobs they would now be occupying but for D&Z's and/or Defendant Unions' discriminatory practices;" (5) an order requiring the Unions and/or D&Z to "implement systems of assigning, training, transferring, compensating, and promoting African-American employees in a non-discriminatory manner;" (6) "[a]n order directing D&Z and/or the Defendant Unions to adjust the wages and benefits of the named Plaintiffs and the class they seek to represent to the level that they would now be enjoying but for such Defendants' discriminatory practices;" (7) "[a]n order requiring D&Z and/or the Defendant Unions to initiate and implement

programs that provide (i) equal employment opportunities for African American members and employees; (ii) remedy the effect of their past and present unlawful employment practices; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices" alleged in the complaint; and (8) "[a]n order establishing a task force on equality and fairness to determine the effectiveness" of the proposed remedies. (Doc. 50 at 64–66).

All three Defendants filed motions to dismiss the Second Amended Complaint. *See* (doc. 59) (UA International's motion); (doc. 61) (UA Local 91's motion); (doc. 62) (D&Z's motion). Applicable here, both Union Defendants have moved to strike the class allegations against them. Defendant UA International moves to dismiss it on grounds that the Plaintiffs failed to exhaust their administrative remedies as against the International UA and that the International UA cannot face liability for the actions of the Local 91. (Doc. 59-1 at 2). Other than UA International's arguments against class certification, the court will not address the UA International's motion because the court will dismiss the complaint as a shotgun pleading as to both it and as to UA Local 91.

UA Local 91 moves to dismiss on shotgun pleading grounds and on a variety of merits grounds. (Doc. 61 at 2). As with the International Union's motion, the court will not address UA Local 91's merits grounds for dismissal here.

Finally, D&Z moves to sever the Plaintiffs from each other and to sever D&Z from the other defendants, moves to dismiss on shotgun pleading grounds, moves to dismiss the Plaintiffs' § 1981 claims against it, and moves to strike the class allegations to the extent that the Plaintiffs repleaded them against D&Z. (Doc. 63 at 2). The court will address only D&Z's shotgun pleading argument.

8

The Plaintiffs responded to the motions by arguing first that the Union Defendants'
motions are untimely and not properly before the court because the Union Defendants chose to
answer the First Amended Complaint as opposed to filing motions to dismiss it. (Doc. 74 at 2; 73
at 2). The Plaintiffs argue that the Second Amended Complaint cured the deficiencies present in
the First Amended Complaint so that the Second Amended Complaint does not constitute an
impermissible shotgun pleading. (Doc. 73 at 2; 71 at 2). And finally, the Plaintiffs argue that
their class allegations against the Unions are distinguishable from their class allegations against
D&Z for the purposes of class certification. (Doc. 74 at 3; 73 at 2).

## II.     Standards

These motions require the court to make two determinations: (1) whether the Second
Amended Complaint remains an impermissible shotgun pleading; and (2) whether the complaint
plausibly alleges a certifiable class.

### A.      Shotgun Pleading

The Eleventh Circuit has developed a large body of caselaw addressing so-called
"shotgun pleadings." Indeed, the Circuit has "had much to say about shotgun pleadings, none of
which is favorable." *Cook v. Randolph Cnty.*, 573 F.3d 1143, 1151 (11th Cir. 2009). In fact, the
Eleventh Circuit issued *yet another* published opinion condemning shotgun pleadings a mere
seven months after this court dismissed the First Amended Complaint as a shotgun pleading. *See*
*Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021).

In short, "a shotgun pleading is a complaint that violates either Federal Rule of Civil
Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov*, 986 F.3d at 1324 (citing *Weiland v. Palm*
*Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Under Fed. R. Civ. P. 8(a)(2),
the plaintiff must limit his complaint to "a short and plain statement of the claim showing that

[he] is entitled to relief." And under Fed. R. Civ. P. 10(b), the plaintiff must "state [his] claims or defenses in numbered paragraphs, *each limited as far as practicable to a single set of circumstances*." (Emphasis added). Importantly for purposes of this case, Rule 10(b) also requires the plaintiff to state "each claim founded on a separate transaction or occurrence…in a separate count[,]" if such a manner of pleading "would promote clarity."

The Eleventh Circuit has repeatedly held that "[s]hotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Barmapov*, 986 F.3d at 1324 (quoting *Weiland*, 792 F.3d at 1320) (internal quotation marks omitted). The framers of the Federal Rules of Civil Procedure crafted Rules 8(a)(2) and (10)(b) with two objectives in mind: (1) to allow the pleader's adversary to "discern what [the pleader] is claiming and frame a responsive pleading;" and (2) to allow the court to determine "which facts support which claims, whether the plaintiff has stated any claims upon which relief can be granted, and whether evidence introduced at trial is relevant." *Barmapov*, 986 F.3d at 1324 (quoting *Weiland*, 792 F.3d at 1320) (internal quotation marks omitted).

Finally, "[b]esides violating the rules, shotgun pleadings also waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Barmapov*, 986 F.3d at 1324 (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)) (internal quotation marks omitted).

The Eleventh Circuit has

identified four rough types or categories of shotgun pleadings. The first is a complaint containing multiple counts where each count adopts the allegations of all

preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The second is a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third is a complaint that does not separate each cause of action or claim for relief into a different count. And the final type of shotgun pleading is a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Barmapov*, 986 F.3d at 1324–25 (quoting *Weiland*, 792 F.3d at 1321–23) (internal quotation marks and alterations omitted). But, as this court held in its first Memorandum Opinion in this case, "the hallmark of a shotgun pleading—whether intentionally crafted or shoddily drafted—is confusion among both defendants and trial courts." (Doc. 43 at 7).

The Eleventh Circuit has also provided guidance to both the courts and to litigants faced with shotgun pleadings. When faced with a shotgun pleading, a litigant should *not* answer the complaint; instead, the litigant tasked with responding to a shotgun pleading should move the court for a more definite statement under Federal Rule of Civil Procedure 12(e). *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 983–84 (11th Cir. 2008), *abrogated on other grounds as recognized by Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020). If the shotgun pleading slips by the opposing litigant, the "district court[] faced with a shotgun pleading should—pursuant to their inherent authority—*immediately* order a repleader and instruct the party to plead its case in accordance with Federal Rules of Civil Procedure 8(a)(2) and (10)(b)." *Barmapov*, 986 F.3d at 1329 (Tjoflat, J., concurring) (citing *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996)) (emphasis in original).

After following the above procedures, the district court should give the shotgun pleader one chance to replead his case. If the complaint as repleaded remains a shotgun complaint, the court has the discretion to "dismiss[] his case with prejudice on non-merits shotgun pleading grounds." *Barmapov*, 986 F.3d at 1326 (quoting *Vibe Micro*, 878 F.3d at 1296).

**B.      Class Certification**

Federal Rule of Civil Procedure 23 governs class certification. The party seeking class

certification must first satisfy all four prerequisites of Rule 23(a): (1) numerosity; (2)

commonality; (3) typicality; and (4) adequacy. *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941

F.3d 1031, 1039 (11th Cir. 2019) (citing *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th

Cir. 2012)). After showing the presence of all four of Rule 23(a)'s prerequisites, the party

seeking class certification—for the purposes applicable to this case—must then satisfy either

Rule 23(b)(2), which allows class certification if "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole;" or Rule 23(b)(3),

which alternatively allows class certification if the court finds that "questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."

Under Federal Rule Civil Procedure 23(c)(1)(A), "[a]t an early practicable time after a

person sues or is sued as a class representative, the court must determine by order whether to

certify the action as a class action." This court previously held—and the parties do not dispute

for purposes of this motion—that "the issues are plain enough from the pleadings…to address

the matter of class certification" pursuant to the motions to dismiss at bar. (Doc. 43 at 14)

(quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (internal quotation marks

omitted).

Accordingly, this court must determine whether the Second Amended Complaint "*plausibly* allege[s] the necessary elements of class certification." (Doc. 43 at 13) (citing *Bohannan v. Innovak Int'l*, 318 F.R.D. 525, 529 (M.D. Ala. 2016) ("nothing in Rule 23 precludes the consideration of class certification issues in the context of a motion to dismiss…the relevant inquiry here is whether the allegations are sufficient to plausibly support the existence of an ascertainable class.")) (emphasis added).

The court, as it did in its previous Memorandum Opinion, will examine the Second Amended Complaint's compliance with Rule 23 via the plausibility standards established under Rule 12(b)(6). *See* (Doc. 43 at 7) (applying Rule 12(b)(6) standard to Plaintiffs' class claims). When reviewing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all factual allegations in the plaintiff's complaint. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court, however, disregards "conclusory allegations" and "naked assertions devoid of further factual enhancement." *McCullough*, 907 F.3d at 1333; *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotation marks omitted). In other words, the court does not honor "unadorned, the-defendant-unlawfully-harmed-me accusations" with the presumption of truth. *McCullough*, 907 F.3d at 1324 (quoting *Iqbal*, 556 U.S. at 678). Such impermissible assertions include mere "labels and conclusions and formulaic recitations of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

After disregarding all assertions not entitled to a presumption of truth, the court examines the remaining factual allegations to ensure that they "plausibly give rise to an entitlement to relief." *McCullough*, 907 F.3d at 1324 (quoting *Iqbal*, 556 U.S. at 679) (emphasis added). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In short, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Motions to dismiss operate to root out claims with no legal basis. *White v. Bank of Am. Nat. Ass'n*, 599 F. App'x 379, 381 (11th Cir. 2015) (quoting *Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006)).

## III.   Analysis

The court will address first whether the Second Amended Complaint is an impermissible shotgun pleading. The court will then address whether the Plaintiffs have plausibly pleaded a certifiable class against the Defendant Unions.

### A.   Shotgun Pleading

Both D&Z and UA Local 91 move to dismiss the Second Amended Complaint on shotgun pleading grounds. D&Z brought the same motion against the First Amended Complaint, while UA Local 91 chose instead to answer the First Amended Complaint. Because UA Local 91 answered the First Amended Complaint, the Plaintiffs argue that UA Local 91's shotgun pleading argument is not properly before the court. (Doc. 73 at 10–11). This argument fails, however, because this court *independently* possesses the "inherent authority" to examine a complaint for compliance with Rules 8(a)(2) and 10(b). *Barmapov v. Amuial*, 986 F.3d 1321, 1329 (11th Cir. 2021) (Tjoflat, J., concurring) (citing *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996)).[1] Additionally, an amended complaint supersedes the original

---

[1] But the court will take this opportunity to direct the Union Defendants to the wise words of Judge Tjoflat: "most importantly, defense counsel should *never* respond to a shotgun pleading in kind;" instead, defense counsel should file a motion to dismiss under Rule 12(b)(6) or a motion for a more definite statement under Rule 12(e). *Barmapov*,

complaint and "becomes the operative pleading in the case;" the Plaintiffs' filing of an amended complaint necessarily required all Defendants to file a new responsive pleading. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219–20 (11th Cir. 2007) (citing *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982)).

In its Prior Memorandum Opinion, this court concluded that the First Amended Complaint fell into the Eleventh Circuit's third and fourth enumerated categories of shotgun complaints: those that feature "conclusory, vague, non-specific facts" and level "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." (Doc. 43 at 8–9) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The court concludes that the Second Amended Complaint fares no better; Plaintiffs pled their disparate impact and treatment claims against both the Union Defendants and D&Z (Counts I, II, IV, and V) in the same shotgun manner as before.

The Plaintiffs' disparate impact and treatment claims against both the Unions (Counts I and II) and D&Z (Counts IV and V) *still* impute *all* alleged discriminatory actions to *all* Defendants. *Compare* (doc. 50 at 25–30) *with* (doc. 50 at 34–60). For example, the Second Amended Complaint states that "D&Z has informed the Plaintiffs that the factors utilized to select foremen and general foreman are 'leadership, prior experience, and absenteeism.'" (Doc. 50 at 8). But the Plaintiffs' use of passive voice ("the factors utilized…*are*") and their imputation of these policies to *both* the Unions and to D&Z (*see, e.g.*, doc. 50 at 8, 43) makes it impossible for either the court or for the defendants to figure out which of the Defendants the Plaintiffs allege used these factors. *See Weiland*, 792 F.3d at 1325 ("[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are

---

986 F.3d at 1330 (citing *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014)) (emphasis in original).

intended to support which claim(s) for relief") (quoting *Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)) (emphasis in original).

The parties' briefs on these motions demonstrate that confusion exists among them regarding which actor allegedly used these challenged factors to select foremen. Defendant Local 91, for example, moved to dismiss the Plaintiffs' disparate impact claim on the merits in part because the Plaintiffs failed to specific any "criteria, policy or method by which Local 91 referred any foreman[.]" In a footnote, Local 91—in reference to the "prior leadership, experience, and absenteeism" criteria—argues that the Plaintiffs *did* identify "the selection criteria that *D&Z* used to fill leadership positions when the Union failed to nominate a foreman." (Doc. 61 at 18, 19 n.4) (emphasis added). But instead of addressing this argument, the Plaintiffs responded to Local 91's motion by *again* alleging that the *Unions* used the "prior experience" criteria in selecting foremen. (Doc. 73 at 23). And in response to *D&Z's* motion to dismiss, the Plaintiffs yet again imputed all three challenged employment practices—the "prior experience" policy, no-posting practice, and nepotism practice—to *D&Z*. (Doc. 71 at 37).

And the Plaintiffs' allegation that both D&Z and the Unions filled leadership positions at D&Z jobsites by considering Union members' "prior leadership, experience, and absenteeism" directly clashes with their independent allegation that both D&Z and the Unions filled leadership positions at D&Z jobsites through nepotism. *See, e.g.*, (doc. 50 at 10) ("[r]eferrals and appointments of foremen and general foremen *were also based* on nepotism practices…") (emphasis added); (doc. 50 at 45) ("the Unions' and D&Z's nepotism practices…"). The very definition of the word "nepotism" necessarily forecloses a decisionmaker's consideration of a potential employee's qualifications for the job. *See Nepotism*, *Black's Law Dictionary* (11th ed. 2019) (the "[b]estowal of official *favors* on one's relatives, especially in hiring; specifically, the

practice of *unfairly* giving the best jobs to members of one's family when one is in a position of power") (emphasis added).

And in its previous Memorandum Opinion, this court expressed concern over D&Z's potential liability for refusing to post or announce vacancies over which it "had no input or control," as D&Z only "stepped up" Union members as foremen when the Union failed to nominate a foreman for a particular D&Z job. (Doc. 43 at 9). The court noted that could not square these conflicting allegations because "D&Z had no anticipatory role to fill any position except to send a manpower request to the local Union[.]" (Doc. 43 at 9). Yet the Plaintiffs, in the Second Amended Complaint, still seek to hold D&Z liable for refusing to post or announce vacancies, in direct conflict with this court's prior finding. (Doc. 50 at 39) ("D&Z does not post, announce or otherwise recruit candidates for open positions. It relies instead on the Defendant Unions' referrals"); (doc. 50 at 39–40) ("[t]he discriminatory impact of such word-of-mouth practices was compounded by D&Z's refusal to provide a means of applying for open positions that would allow African Americans to fairly compete on a race-neutral basis").

In a similar vein, the Second Amended Complaint contains a list of white Union members that worked in leadership positions that those members supposedly obtained through nepotism, but the Second Amended Complaint does not specify *which* Defendant placed those individuals in leadership positions. The court expressly directed the Plaintiffs to cure this deficiency, which the First Amended Complaint also contained. *See* (doc. 43 at 10) ("on the several occasions when the Amended Complaint specifically names individual foremen who Defendants referred and selected, the Plaintiffs fail to specify *which* Defendant(s) placed the individuals in their positions") (emphasis in original). Although the Second Amended Complaint realleges the same list of individuals to which the court referred in its prior Opinion, the Second

Amended Complaint again fails to specify which Defendant(s) placed those individuals in leadership positions and instead imputes those actions to both D&Z (doc. 50 at 45, ⁋ 100) and the Unions (doc. 50 at 11, ⁋ 22).

Instead of clarifying which Defendants took which actions or used which of the challenged employment policies, the Plaintiffs merely allege—in a wholly conclusory manner—that the Unions and D&Z face "joint and several liability" for the actions of each other. (Doc. 50 at 36, 55). But the Plaintiffs do not allege any facts supporting such "joint and several liability" other than the bare assertion that D&Z and "the Union" (the complaint does not allege *which* Union) "jointly adopted" the selection and referral policies. (Doc. 50 at 36). And the Plaintiffs provide no explication of *how* D&Z and "the Union" jointly adopted the challenged policies. So the Plaintiffs' conclusory allegations of "joint and several liability" between D&Z and the Union Defendants do not do much to bring clarity to their allegations. *See also Turner v. US Bank*, No. 1:18-CV-3272-LMM-LTW, 2019 WL 2344148 at *4 (N.D. Ga. Mar. 11, 2019) (the "quintessential" characteristics of a shotgun pleading include vague allegations of "joint and several liability" and the failure to "specifically allege the conduct of each [d]efendant") (citing *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295–96 (11th Cir. 2002)).

Plaintiff Samuel's and Jones's retaliation claim against D&Z (Count VI) adds even more fuel to the conflagration of confusion raging in the disparate impact and treatment claims against the Unions and D&Z. As explained above, for purposes of their *disparate impact* claims against D&Z, *all* Plaintiffs allege that D&Z used certain facially-neutral but *de facto* discriminatory employment practices to select foremen for its jobs, including the consideration of "leadership, prior experience, and absenteeism" (doc. 50 at 43); nepotism (doc. 50 at 45); and word-of-mouth

hiring (doc. 50 at 52). But in their retaliation claim against D&Z, Plaintiffs Samuel and Jones allege that "the general foreman had always selected the foreman under them[.]" (Doc. 50 at 61).

And the court likewise cannot determine which of the Defendant Unions the Plaintiffs allege took which actions. For example, although the complaint alleges that D&Z is a "union contractor" (doc. 50 at 5), it does not specify *which* Union D&Z contracted with. From what the court can discern from the Second Amended Complaint, UA Local 91 *referred* particular members to work on D&Z projects, but the complaint does not state whether D&Z *contracted* with UA Local 91 or with the International Union. (Doc. 50 at 36) ("[a]s the Union making…referrals to D&Z, *Local 91*…"). Instead, the Plaintiffs seek to impute liability on the International Union for the (apparent) actions of UA Local 91 through the purely conclusory allegation of the existence of an agency relationship between the two entities. (Doc. 50 at 6).

Plaintiffs primarily argue that because UA Local 91 and D&Z also moved to dismiss the disparate impact and treatment claims against them on the merits, those Defendants necessarily understood the nature of the claims against them. *See Wallace v. VF Jeanswear Ltd. P'ship*, No. 5:18-cv-2009-AKK, 2020 WL 999341 at *3 (N.D. Ala. Mar. 2, 2020). But as the court explained above, the parties' briefing on the motions to dismiss show the opposite: that the Defendants *do not* understand the claims against them. None of the Defendants could figure out, for example, which Defendant(s) the Plaintiffs allege used the challenged employment practices. *See supra* at 16 (citing (doc. 61 at 18, 19 n.4); (doc. 73 at 23); (doc. 71 at 37)). Additionally, UA Local's motion to dismiss on the merits primarily pointed out the Second Amended Complaint's widespread use of conclusory statements; the presence of conclusory statements also supports dismissal on shotgun pleading grounds. *See Barmapov*, 986 F.3d at 1324–25 (quoting *Weiland*, 792 F.3d at 1321–23).

D&Z's arguments on the merits also support and underscore this conclusion. D&Z moved to dismiss Plaintiffs' § 1981 disparate impact claim on the grounds that § 1981 does not provide for a disparate impact cause of action. (Doc. 63 at 30). In response to D&Z's motion, the Plaintiffs clarified that they "do not pursue any such claim and hereby withdraw that reference to § 1981 from the disparate impact allegations of the Complaint." (Doc. 71 at 38). The very face of D&Z's motion to dismiss shows that it could not ascertain the claims against it—and neither can the court.

Finally, the court concludes that Plaintiffs Samuel and Jones did *not* plead their retaliation claim against D&Z (Count VI) in a shotgun manner. (Doc. 50 at 60–64). Unlike Plaintiffs' disparate impact and treatment claims (Counts I, II, IV and V), Plaintiffs Samuel and Jones clearly allege D&Z as the discriminatory actor. And they allege that D&Z terminated them because they filed EEOC charges related to this case. (Doc. 50 at 64). Accordingly, the court finds Count IV sufficiently clear for both the Defendants and the court to "discern what [the Plaintiffs] are claiming." *Barmapov*, 986 F.3d at 1324 (quoting *Weiland*, 792 F.3d at 1320) (internal quotation marks omitted). And although the retaliation claim injects confusion into the disparate impact and disparate treatment claims—namely, the methods by which certain leadership positions were filled on D&Z jobsites—the retaliation claim is not confusing *in and of itself*.

Now that the court has determined that the Plaintiffs pled Counts I, II, IV, and V in a shotgun manner, the court must determine how to dispose of those claims. As explained above, when a court determines that a complaint constitutes a shotgun pleading, the court should give the shotgun pleader one chance to replead his case. If the complaint as repleaded remains a shotgun complaint, the court has the discretion to "dismiss[] his case with prejudice on non-

merits shotgun pleading grounds." *Barmapov*, 986 F.3d at 1326 (quoting *Vibe Micro*, 878 F.3d at 1296).

Because the court dismissed the First Amended Complaint on shotgun pleading grounds as to *D&Z only*, the court has not yet given the Plaintiffs a chance to replead their claims against the Unions. Accordingly, the court will DISMISS Count I (disparate impact against the Unions) and Count II (disparate treatment against the Unions) WITHOUT PREJUDICE and will GRANT the Plaintiffs LEAVE TO AMEND Counts I and II.

But as to Count IV (disparate impact against D&Z) and V (disparate treatment against D&Z), the court concludes—for the reasons explained above—that the Second Amended Complaint remains a shotgun pleading as to D&Z. Accordingly, the court will DISMISS Counts IV and V against D&Z WITH PREJUDICE. *See Barmapov*, 986 F.3d at 1326 (quoting *Vibe Micro*, 878 F.3d at 1296).

And because Count VI does not constitute a shotgun pleading, the court will DENY D&Z's motion to the extent it requested dismissal of Count VI on shotgun pleading grounds. Count VI will remain pending against D&Z.

### B.    Class Certification

Before addressing the merits of the Defendants' motions to dismiss the class allegations, the court notes here that it never gave the Plaintiffs permission to re-allege their class claims against the Union Defendants. In its previous Memorandum Opinion (doc. 43 at 31) and Order (doc. 44), the court dismissed the First Amended Complaint as to D&Z *on shotgun pleading grounds*. The court then granted D&Z's motion to dismiss the Plaintiffs' class claims and struck the class claims *without reference to either defendant*. Finally, the court allowed the First Amended Complaint to "remain[] operative" as to the Union Defendants. So the First Amended

Complaint necessarily "remained operative" as to the Union Defendants *without the class claims*. But even if the court had allowed the Plaintiffs to re-allege their class claims as to the Union Defendants only, the court still determines that certification of those claims remains improper.

  **i.**  **Rule 23(a)(2) Commonality**

  This court previously concluded that the proposed class did not satisfy Rule 23(a)(2)'s requirement that potential class plaintiffs demonstrate the existence of "questions of law or fact common to the class" because the Plaintiffs alleged that "D&Z supervisors engaged in a variety of discretionary, *ad hoc*, and subjective behaviors which provide[s] no cause to believe that all their claims [could] productively be litigated at once." (Doc. 43 at 24) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (internal quotation marks omitted).

  Particularly, the Supreme Court in *Dukes* pointed out that "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." 564 U.S. at 350 (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). In other words, "[w]ithout some glue holding the alleged *reasons* for all [employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Dukes*, 564 U.S. at 352 (emphasis in original).

  And this court previously found missing the *Dukes* requirement that Plaintiffs "plausibly identify an objective, facially neutral but *de facto* biased testing procedure that systematically discriminates against the alleged class." (Doc. 43 at 20) (citing *Washington v. Brown &*

*Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 n.10 (11th Cir. 1992)). *See also Dukes*, 564 U.S. at 355.

The Plaintiffs argue that their class claims against the Unions are distinguishable from their class claims against D&Z for Rule 23(a)(2) purposes because "[t]he referral claims against the Unions are based on the type of objective and *de jure* policies implemented by high-level decisionmakers that the court found missing from the step-up claims plead against D&Z…the Union itself adopted the no-posting, word-of-mouth referral system…[and the] nepotism and prior experience policies." (Doc. 73 at 36). But the complaint also alleges that "[t]he referral and selection process for both leadership and journeymen positions *occurred separately for each outage or project that D&Z staffed*." (Doc. 50 at 8) (emphasis added). Additionally, *either* the Union could "nominate" a foreman for a D&Z job *or* D&Z could "step-up" a Union member to a leadership position if the Union failed to nominate a foreman. (Doc. 50 at 7). And the class definition still includes both (1) all African American members of the International Union and/or Local 91; and (2) all African American pipefitters and welders employed by D&Z. (Doc. 50 at 19). And as explained above in the court's "shotgun pleading" analysis, the Second Amended Complaint—including the class allegations—does not clearly articulate which Defendant utilized which employment practices.

So, based on the allegations of the Second Amended Complaint, the "answer to the crucial question *why was I disfavored*" for some Plaintiffs could be through the application by *either* D&Z *or* the Unions of a nepotism policy; through the biased application by *either* D&Z *or* the Unions of "prior experience" criteria; *or* through the biased application by *either* D&Z *or* the Unions of a word-of-mouth hiring policy. *See Dukes*, 564 U.S. at 352. The removal of D&Z as a *defendant* for purposes of the class allegations does not mean that those allegations do not

potentially encompass *employment actions taken by D&Z.* The Plaintiffs' class allegations simply lack any "glue holding the alleged *reasons* for all [employment] decisions together." *Dukes*, 564 U.S. at 352 (emphasis in original).

In short, the Plaintiffs simply have not shown that their claims "depend upon a common contention." *Dukes*, 564 U.S. at 352. The court's previous holding remains unchanged: "neither [the Plaintiffs'] disparate impact claims nor [their] disparate treatment claims are certifiable." (Doc. 43 at 23) (citing *Dukes*, 564 U.S. at 355–56).

### ii.      Rules 23(b)(2) and 23(b)(3)

The Plaintiffs do not argue at length that their class claims remain certifiable under either Rule 23(b)(2) or (b)(3); instead, they largely rehash the same arguments they advanced against D&Z's previous motion to dismiss the class claims. As to Rule 23(b)(2), the Plaintiffs and the putative class they seek to represent request a wide variety of individualized equitable and monetary relief, including reinstatement "to the jobs they would now be occupying but for D&Z's and/or Defendant Unions' discriminatory practices;" "back pay (plus interest);" and "compensatory and punitive damages." (Doc. 50 at 64–65).

But "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant or when each class member would be entitled to an individualized award of monetary damages." (Doc. 43 at 25) (quoting *Dukes*, 564 U.S. at 360–61). The Plaintiffs' requested relief thus precludes certification under Rule 23(b)(2).

And as to Rule 23(b)(3), this court previously pointed out that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)['s]" commonality requirement.

24

(Doc. 43 at 27) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). The Plaintiffs—as they did when faced with D&Z's prior motion to dismiss—argue that "[i]ndividualized damages alone do not defeat predominance." (Doc. 73 at 38) (citing *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1232, 1239 (11th Cir. 2016)).

But the court already rejected this argument in holding that "the wide variety of requested damages, injunctions, and declarations, coupled with the intensely fact-specific nature of each Plaintiff's proposed remedies, clearly illustrates the predominance of individualized questions." (Doc. 43 at 28–29). The Plaintiffs seek the same relief in the Second Amended Complaint that they sought in the First Amended Complaint. *Compare* (doc. 30 at 33–34) *with* (doc. 50 at 64–68). The court therefore finds the proposed class uncertifiable under Rule 23(b)(3) for the same reasons it found the First Amended Complaint's proposed class uncertifiable.

Because the Second Amended Complaint does not plausibly allege facts sufficient to support class certification under Federal Rule of Civil Procedure 23, the court will GRANT the Unions' motions to dismiss the class allegations and will DISMISS the Plaintiffs' class allegations WITH PREJUDICE. *See Bohannan v. Innovak Int'l*, 318 F.R.D. 525, 529 (M.D. Ala. 2016); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### C.    D&Z's Motion to Sever

Finally, D&Z filed a motion to sever all named Plaintiffs from each other and to sever D&Z from the Union Defendants. (Doc. 62). But because the court will dismiss the Plaintiffs' disparate impact and disparate treatment claims with prejudice as to D&Z, the only claims that remain pending against D&Z in this case are Plaintiff Samuel's and Jones's retaliation claim (Count VI).

Under Fed. R. Civ. P. 21, "the court may at any time, on just terms, add or drop a party [or] sever any claim against a party." District courts possess "considerable discretion" in determining whether to sever a case and may consider "administrative reasons" in deciding whether to order severance. *Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010).

Because Plaintiffs Samuel and Jones also apparently joined in the other Plaintiffs' disparate impact and disparate treatment claims against the Unions that the court will dismiss on shotgun pleading grounds, the court will dismiss D&Z's motion to sever without prejudice to refiling after the Plaintiffs replead those claims against the Unions. Such repleading will hopefully bring more clarity to the claims of individual Plaintiffs and will allow the court to avoid any unnecessary prejudice that may result to Plaintiffs Samuel and Jones from a premature severance of their retaliation claim against D&Z from their disparate impact and disparate treatment claims against the Union Defendants.

The court will accordingly DENY D&Z's motion to sever WITHOUT PREJUDICE.

## IV.   Conclusion

For the reasons explained above, the court will **GRANT IN PART** and **DENY IN PART** D&Z's motion to dismiss (doc. 62) on shotgun pleading grounds and will **DISMISS** Counts IV and V against D&Z **WITH PREJUDICE**. The court will **DENY** D&Z's motion to dismiss as to Count VI.

The court will also **GRANT** UA Local 91's motion to dismiss (doc. 60) on shotgun pleading grounds and will **DISMISS** Counts I and II **WITHOUT PREJUDICE**.

The court will **GRANT** the UA International's and UA Local 91's motions to dismiss the class allegations (doc. 59; 60) and will **DISMISS** the class allegations against the UA International and UA Local 91 **WITH PREJUDICE**.

The court will **DENY** the UA International's motion to dismiss (doc. 59) **WITHOUT PREJUDICE** as **MOOT** and will **DENY** D&Z's motion to sever (doc. 62) **WITHOUT PREJUDICE**.

And finally, because the parties stipulated to the dismissal of Count III (retaliation against the Union defendants) with prejudice, the court will **DISMISS** Count III **WITH PREJUDICE**.

The court will also **GRANT LEAVE** to the Plaintiffs to replead their complaint against the Defendant Unions without any class allegations. To avoid dismissal with prejudice on shotgun pleading grounds, the Plaintiffs' Third Amended Complaint—if the Plaintiffs file one— should include to the extent practicable (1) which Defendant(s) used which challenged employment practice(s); (2) which Defendant(s) used nepotism to place the listed individuals at ¶ 22 of the Second Amended Complaint into leadership positions; and (3) the relationship between the International Union and UA Local 91, including but not limited to any and all facts showing the existence of an agency relationship between the International and Local 91 and the role each Union Defendant played in referring Union members to leadership positions on D&Z jobs.

**DONE** and **ORDERED** this 16th day of June, 2021.

_Karon O. Bowdre_

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE