# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **RONALD KING,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )     **CIVIL ACTION NO.** |
| | )     **2:19-cv-01115-KOB** |
| **UA LOCAL 91,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This veritable hydra of a case comes before the court on the Union Defendants' joint motion for judgment on the pleadings (Doc. 188). Anyone who attempted to destroy the mythical hydra found that as soon as the attacker severed one of the beast's nine heads, two more sprang up to take its place.[1] In much the same way, the Union Defendants contend that, though their prior motions to dismiss eliminated several of Plaintiffs' claims, a plethora of new ones not pled in the operative complaint have sprung up in their place.

Plaintiffs originally filed this action in July 2019, alleging that UA Local 91, the International UA, and Day & Zimmerman (one of several contractors to whom Local 91 refers its members) denied them opportunities to work in foreman,

---

[1] Hydra, Encyclopaedia Britannica (Oct. 20, 2022), https://www.brittanica.com/topic/Hydra-Greek-mythology.

1

general foreman, and other leadership positions because of racial discrimination. (Doc. 1). Over the course of several years, the court has evaluated no fewer than three rounds of motions to dismiss, including a ruling in June 2021 that narrowed the case to four claims: (1) disparate impact and (2) disparate treatment claims against the Union Defendants and (3 and 4) separate retaliation claims by Plaintiffs Chris Samuel and Nolan Jones, Jr. against Day & Zimmerman. (Doc. 85).

After Plaintiffs filed their Third Amended Complaint and the court denied the Union Defendants' motion to dismiss it (docs. 89, 121), the parties began conducting discovery. Throughout that process, several disputes arose that revealed the parties' fundamentally different understanding of which factual scenarios were at issue based on the Third Amended Complaint and the court's prior rulings. *See, e.g.*, (docs. 145, 150, 151, 161, 176). The Union Defendants subsequently filed this motion for judgment on the pleadings to resolve the parties' dispute about the scope of the claims remaining in the case.

First, some factual background. Under a collective bargaining agreement known as the Southern Company Maintenance and Modification Agreement ("SCMMA"), UA Local 91, as delegee of the International UA, referred its members to various contractors when a contractor submitted a manpower request indicating its need for one or more journeymen. As the court explained in a prior memorandum opinion, "The crux of the Plaintiffs' Third Amended Complaint is

that UA Local 91 through its referral policies and procedures denied the Plaintiffs the opportunity to work in leadership positions—including foreman, general foreman, and other leadership positions—at D&Z and other contractors at the same rate as Caucasian Union members." (Doc. 121 at 3). Plaintiffs contend that the International Union is liable for Local 91's discriminatory referral process because it failed to monitor and correct the discrimination after delegating its referral power under the SCMMA to Local 91. (Doc. 89 at ¶¶ 47-60).[2]

In some cases, Local 91 nominated one of the members it referred to fill a leadership role. On the other hand, "If Local 91's referral list does not designate particular members to consider for foreman, general foreman or other leadership positions, the contractor is permitted to 'step up' members from the union's referral list for appointment to such positions." (Doc. 89 at ¶¶ 20-21). And while Local 91 made referrals and sometimes nominated particular members for leadership roles, under the SCMMA each contractor retains the "complete authority and right" to make the ultimate hiring decisions for each project and to determine whether one or more foremen were needed. (Doc. 89-1 at 13). Still, "All contractor's [sic] appointments to foreman, general foreman or other leadership positions were based on referral lists from Local 91 regardless of whether Local 91

---

[2] Because only the Union Defendants filed the instant motion and no dispute exists regarding the scope of the retaliation claims against D&Z, the court omits discussion of the allegations related to those claims.

specified the particular members on the list to consider for foreman, general foreman or other leadership positions." (Doc. 89 at ¶ 21).

The Union Defendants' motion asks this court to clarify that four factual scenarios are <u>not</u> among those that Plaintiffs' Third Amended Complaint alleged were discriminatory: (1) referrals where Local 91 did not designate anyone as its nominee for foreman; (2) any contractors' selections of someone other than Plaintiffs as a foreman where the employee who made the hiring decision was a member of Local 91; (3) any contractors' selection of foremen without seeking a referral for the foreman position from Local 91; and (4) referrals to job locations not covered by the SCMMA. (Doc. 188 at 2). Because the Complaint[3] does not plead facts that would render plausible discrimination claims premised on any of the four scenarios the Union Defendants' motion describes, the court will grant the motion in all respects.

**Legal Standard**

A court decides a motion for judgment on the pleadings on the same standard as a motion to dismiss. *See Losey v. Warden*, 521 Fed. Appx. 717, 719 (11th Cir. 2013) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) and *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004)). Thus,

---

[3] For brevity, the court refers to Plaintiffs' Third Amended Complaint (doc. 89), which is the operative complaint at this stage, simply as the "Complaint."

a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive either type of motion. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Thus, while notice pleading imposes relatively light requirements on plaintiffs, legal conclusions in a complaint "must be supported by factual allegations" that are sufficient to "nudge[ its] claims across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 679; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While the court must presume the truth of facts alleged in the complaint, "the presumption of truth applies only to facts," so "the court may disregard 'labels and conclusions . . . couched as . . . factual allegation[s].'" *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). On the other hand, a claim reaches the plausibility threshold "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**Analysis**

<u>Referrals That Did Not Designate a Foreman</u>

The Union Defendants' first request is a ruling that they "have not violated Title VII and/or 42 U.S.C § 1981 by failing to designate a foreman on all requests for manpower made by a contractor." (Doc. 188 at 2). Plaintiffs do not directly argue that Local 91 was obligated to designate a foreman on every manpower request. (Doc. 201 at 18) (acknowledging that the theory that Local 91 had to designate a foreman on every request "is not a claim made in this case"). But the Union Defendants argue that such a claim is the logical implication of Plaintiffs' contention that the Complaint includes claims based on instances where Local 91 allegedly denied referrals to Plaintiffs by *failing* to designate a foreman: in the *Union Defendants'* view, such a claim is tenable only if it was not permissible for Local 91 to make a referral without designating a foreman.

Plaintiffs' position, however, does not necessarily imply such a universal rule. Assuming *arguendo* that failure to designate a foreman can support a claim of discrimination, that does not mean that <u>all</u> choices not to designate a foreman are discriminatory. Evidence could theoretically establish that Local 91 sometimes chose not to designate a foreman for legitimate reasons while in other instances it avoided designating any foreman because one of the Plaintiffs was at the top of an out-of-work list and Local 91 did not want to designate that Plaintiff as a foreman

6

because of racial animus. So, the question before the court is not whether Local 91 was required to designate a foreman on *all* manpower requests, but whether its failure to designate a foreman could *ever* support a claim in the instant case.

Without deciding whether Plaintiffs *could have* pled a claim that would satisfy the Rule 12(b)(6) standard based on Local 91's failure to designate foremen on manpower requests, the court finds that these Plaintiffs have not done so in their fourth attempt to present their claims. Only one phrase in the Complaint alludes to this theory, and the complaint does not plead facts to support it. The Complaint alleges that Local 91 discriminated against Plaintiffs "when it failed to place Plaintiffs on referral lists, when it failed to refer them for appointment to foreman, general foreman or other leadership positions and nominated Caucasian members instead, and when it chose not to specify anyone on the referral list to be considered for such positions." (Doc. 89 at ¶ 22).

But Plaintiffs' factual allegations throughout the Complaint fail to provide a "short and plain statement" rendering their claim plausible as to situations where Local 91 allegedly chose not to nominate any member for a foreman or other leadership positions. *See* FED. R. CIV. P. 8(a)(2) (requiring "short and plain statement of the claim showing that the pleader is entitled to relief"); *Twombly*, 550 U.S. at 570 (complaint must plead "enough facts to state a claim for relief that is plausible on its face"). Instead, the entirety of the Complaint provides a "short

7

and plain statement" only as to situations where Local 91 allegedly referred Caucasian members for leadership positions instead of Plaintiffs.

For instance, just three paragraphs later, Plaintiffs allege that "Local 91 did not refer any of [Plaintiffs] for foreman, general foreman or other leadership positions or opportunities. *Instead, it referred the following Caucasian union members for all such opportunities*." (Doc. 89 at ¶ 25) (emphasis added). The court reads this allegation to mean exactly what it says: in "all" cases where Plaintiffs allege that Local 91 discriminatorily chose not to refer them, it referred Caucasian members instead. This allegation necessarily precludes the possibility of other instances of discrimination where Local 91 referred no one as foreman. Nowhere does the Complaint make a parallel allegation that Local 91 denied Plaintiffs foreman opportunities by choosing not to nominate a foreman at all, that it did so because of Plaintiffs' race, or that Caucasian union members ultimately worked as foremen on those jobs. Without such supporting factual allegations, Plaintiffs have not pled a plausible claim that the Union Defendants discriminated against Plaintiffs in situations where they chose not to designate a foreman nominee on a referral.

Plaintiffs' opposition to the instant motion argues that the Union Defendants "cite nothing in the Complaint as support for" their contention that only "situations where Local 91 referred a Caucasian to be a foreman [and] any of the five

Plaintiffs were included on that referral" are at issue. (Doc. 201 at 12). But it is *Plaintiffs* who must point to material in the complaint that states a claim based on other scenarios, and the Complaint is devoid of any such allegations. A plaintiff is master of his complaint, but he bears the responsibility of pleading sufficient facts to render plausible any claim he desires to pursue; a defendant need only respond to the claims asserted and has no obligation to demonstrate affirmatively that other claims are not at issue. *See, e.g.*, *Cyprian v. Auburn Univ. Montgomery*, 799 F. Supp. 2d 1262, 1289 (M.D. Ala. 2011) (citing *Thampi v. Manatee Cnty. Bd. of Comm'rs*, 384 F.3d. Appx. 983, 988 (11th Cir. 2010)) ("Because [Plaintiff] never amended her complaint to include a claim of retaliation based on her June 3, 2009 conversation with Dr. Sims, that claim is not properly pled and the Court will not consider it.")

Plaintiffs also argue that limiting the case to situations where Local 91 referred one or more of the Plaintiffs for a particular job but designated someone else as its nominee for the foreperson role is improper because "[i]t is well known from the face of the foreman referrals that they often list no one except the single person being referred to foreman." (Doc. 201, at 13). That may well be true, but it is a fact nowhere to be found in the Complaint. Instead, the Complaint alleges that upon receiving a referral request, "Local 91's Business Manager refers particular union members to the contractor by sending it a 'referral list,' typically by telefax

9

or email. Such referrals can include Local 91's nominees for foreman, general foremen and other supervisory positions for the outage or project at issue." (Doc. 89 at ¶ 20). The court must determine whether these allegations—not subsequent assertions in briefing or evidentiary material not attached to the Complaint, however "well known"—state a plausible claim for relief.[4] *Cyprian*, 799 F. Supp. 2d at 1289 (plaintiff may not amend complaint through argument in a brief).

Because the Complaint contains no facts in support of the conclusory allegation in ¶ 22 that the Union Defendants discriminated against Plaintiffs when Local 91 "chose not to specify anyone on the referral list to be considered" for foreperson or other leadership positions, it does not state a plausible claim to relief based on those scenarios. Rather, the Complaint states plausible claims *only* regarding situations where Local 91 referred a Caucasian member for a leadership

---

[4] Plaintiffs state that the foreman referrals they attach as examples of referrals that list only the foreman nominee "are undisputed and authenticated on their face," (doc. 201 at 13 n.3) but that does not change the fact that the court decides a motion for judgment on the pleadings, well, *on the pleadings*. At this stage, the court may consider extraneous documents only where they are "central to the claim at issue." *Perez v. Wells Fargo NA*, 774 F.3d 1329, 1340 n.12 (11th Cir. 2014). A quintessential example of a document "central to the claim at issue" is a newspaper article containing the allegedly defamatory statements at issue in a defamation action. *Horsley v. Feldt*, 304 F.3d 1125, 1133-35 (11th Cir. 2002).

While the referral process is central to these claims, the referral records documenting them—and specifically the limited set of referrals that name only the foreman nominee—are not central to the allegations in the Complaint, which does not mention these documents or the types of referrals they document. Using materials not discussed in the complaint to decide what claims that complaint properly pleads would turn on its head the rule that extrinsic materials can be considered only when central to the claims at issue.

position on a job for which it also referred one or more of the Plaintiffs to be part of the crew. So, the court will grant the Union Defendants' motion as to any claim based on referrals where Local 91 did not designate a foreman nominee.

### Selection of Foremen by Contractor Employees Who Were Union Members

The Union Defendants next seek a judgment that they "have not violated Title VII and/or 42 U.S.C. § 1981 based on the alleged discriminatory selection of foremen (or other leadership positions) by General Foremen or other supervisors who may be members of Local 91." (Doc. 188 at 2). The Union Defendants emphasize that in its ruling on their most recent motion to dismiss, the court distinguished claims based on contractors' ultimate selection of foremen and Local 91's referrals for such positions. There, the court expressly stated: "UA Local 91 confuses the *referral* stage with the *selection* stage. The Plaintiffs' basis for race discrimination under disparate impact and disparate treatment involves UA Local 91's *referral* process and practices that allegedly deprived them of the *opportunity* for a leadership position." (Doc. 121 at 11-12) (citations omitted; emphasis in original). The inescapable implication of that holding is that the Complaint states claims based upon Local 91's referral decisions, but not contractors' later selections.

Plaintiffs argue that the distinction between referral and selection "applied only to Local 91's argument that it was not liable for 'selection' decisions made

11

*solely* by the contractors without any union connection or involvement." (Doc. 201 at 25) (emphasis in original). Although Plaintiffs cite pages 11-13 of the court's prior opinion for that proposition, the opinion contains no such qualification or limitation. Rather, the court held that "the fact that the SCMMA vests the ultimate decision with the contractors whether to hire or appoint a referred Union member to a leadership position does not negate that UA Local 91 plausibly could be liable for discrimination *in its referral process* for leadership positions." (Doc. 121 at 12) (emphasis added). The court's statement plainly concerned situations that *did* include "union connection or involvement," as it discussed contractors' hiring decisions concerning "referred Union member[s]." Plaintiffs' willful misreading of this court's prior decision notwithstanding, the claims the court found plausible were those based on Local 91's referral decisions, not contractors' ultimate selections, whether or not made by employees who were also union members.

Nor is that statement the only place where the court made clear that the Complaint states claims only regarding the referral process and not contractors' selection decisions: "The court finds that the fact that the contractor ultimately *selects* the Union members for leadership positions for a job does not affect that Plaintiffs have alleged a plausible claim for disparate treatment and disparate impact in UA Local 91's *referrals* for those leadership positions." (Doc. 121 at 14) (emphasis in original). The reason why the court so held is simple: the Complaint

12

lacks any allegations placing responsibility for *selection* decisions, rather than *referrals*, on the Union Defendants. Indeed, the SCMMA, which Plaintiffs attached to the Complaint, makes abundantly clear that contractors, not Local 91, make selection decisions: "[T]he Contractor has the complete authority and right to: . . . Hire and lay off employees as the Contractor feels appropriate" and to "Determine the need and number of foremen [and] name the foremen . . .". (Doc. 89-1 at 13).

Plaintiffs do not dispute that contractors ultimately make the selection decision. They contend, however, that the selection vs. referral distinction

> does not apply to foreman opportunities that are denied by the Union in tandem with General Foreman [sic] in making foreman requests and foreman referrals or in deciding not to make such a request or referral. Each of those acts or omissions are done by the union and its members who are acting as temporary General Foremen in tandem with one another.

(Doc. 201 at 25). In other words, Plaintiffs now contend that members of Local 91 employed by contractors as general foremen worked "in tandem with" Local 91 to determine that Local 91 would not refer anyone for a foreman position so that the general foremen could avoid selecting Plaintiffs because of their race. But the Complaint does not even allege that the general foremen making the "step-up" decisions in situations where Local 91 did not nominate a foreman were union members, much less that they coordinated those decisions with Local 91 instead of exercising their own independent judgment.

In response to the Union Defendants' pointing out that they legally could not have directed their members' decisions in those situations, Plaintiffs counter that "the mere fact that the Union is not *supposed to* direct its members' managerial choices 'such as naming the foremen' does not mean that it doesn't do so anyway." (Doc. 201 at 29) (citation omitted; emphasis in original). That may be true, so far as it goes. But it does not relieve Plaintiffs of their obligation to plead that the Union Defendants "[did] so anyway" if they wish to advance that theory. Plaintiffs had no fewer than four opportunities to make those allegations and have declined to do so until this briefing, so the court cannot read them into the Complaint and will not permit Plaintiffs a fifth opportunity to state new claims. The court will therefore also grant the Union Defendants' motion as to any claims based on contractors' selection decisions, regardless of whether the employee making the hiring decision was a member of Local 91.

Appointments of Foremen Without Seeking a Referral from Local 91

The Union Defendants' third request for judgment on the pleadings is similar to the second, seeking a ruling that the Union Defendants "have not violated Title VII and/or 42 U.S.C. § 1981 by conspiring with, instructing, or allowing contractors to select foremen (or other leadership positions) from among the contractors' existing workforces without a referral from Local 91." (Doc. 188 at 2). The Union Defendants argue that "there is a complete lack of factual support

14

for this claim in the [Complaint]" (doc. 188-1 at 16) because it lacks any allegation that contractors' general foremen were "in any way acting as agents of Local 91 in the appointment of foremen" (doc. 209 at 7).

Plaintiffs essentially respond that Local 91 should have referred someone in every instance where a contractor needed a foreman, whether or not that contractor requested a referral, arguing that "[t]here is no basis in the pleadings for finding that a contractor's request for referral was necessary in order for Local 91 to know that a foreman vacancy existed or that a foreman referral needed to be made. If that was its reason for not making a particular referral, the Defendant bears the burden of 'articulating' that reason through competent evidence." (Doc. 201 at 21). That is wrong, and paradigmatically so. It is a plaintiff's obligation to allege wrongdoing in the first instance; defendants bear no duty to justify acts or omissions that a plaintiff has not first challenged. *See, e.g., Cyprian*, 799 F. Supp. 2d at 1289 (court will not consider claims based on facts not pled in complaint).

In the case of discrimination claims, a defendant cannot discriminate in its hiring (or here, referral) decisions unless a vacancy exists to be filled. *See, e.g. Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 358 n.44 (1977) (plaintiff alleging discrimination must "demonstrate at least that his rejection did not result from . . . the absence of a vacancy in the job sought"). But the requirement of a vacancy is just one of the problems with Plaintiffs' position. The other problem is that

15

Plaintiffs simply have not alleged in the Complaint facts that would support a discrimination claim based on the argument they now present in their brief. The Complaint alleges that Local 91 discriminated in three situations (though, as explained above, the Complaint does not allege sufficient facts to support all three theories): "when it failed to place Plaintiffs on referral lists, when it failed to refer them for appointment to foreman, general foreman or other leadership positions and nominated Caucasian members instead, and when it chose not to specify anyone on the referral list to be considered for such positions." (Doc. 89 at ¶ 22). None of those scenarios involves a contractor's choice to appoint a foreman from its existing workforce or the list of journeymen without requesting a referral.

  The Complaint makes no allegation that Local 91 was ever aware of a vacancy and chose not to make a referral at all, let alone that it did so to avoid referring Plaintiffs because of their race. To the contrary, the Complaint expressly alleges that Local 91 "referred the following Caucasian union members for *all* such opportunities [*i.e.*, foreman, general foreman or other leadership opportunities]." (Doc. 89 at ¶ 25) (emphasis added). Moreover, the Complaint further alleges that "All contractor's [sic] appointments to foreman, general foreman, or other leadership positions were based on referral lists from Local 91 regardless of whether Local 91 specified the particular members on the list to consider for foreman, general foreman, or other leadership jobs." (Doc. 89 at ¶ 21) That

16

allegation is, to say the least, inconsistent with Plaintiffs' current argument that contractors—presumably working in tandem with Local 91 in some unspecified way—avoided requesting a referral to prevent Plaintiffs from working as foremen.

So, even if such situations did exist and Local 91 could hypothetically be liable for them, they are outside the scope of plaintiffs' well-pled allegations here because the Complaint does not put the Union Defendants on notice of any such claims. Accordingly, the court will grant the Union Defendants' motion as to claims based on situations where a contractor made a hiring decision without first seeking a referral from Local 91.

Referrals Not Covered by the SCMMA

Finally, the Union Defendants seek a ruling that the Complaint "does not state a claim for violations of Title VII and/or 42 U.S.C. § 1981 at jobsites not covered by the [SCMMA]." (Doc. 188 at 2). As the Union Defendants point out, Plaintiffs explicitly state in the Complaint that "The SCMMA creates, authorizes and controls the Union's referral rights and obligations that are the subject of this action." (Doc. 89 at ¶ 17). Plaintiffs respond that the Complaint "pleads the SCMMA *only* as part of the two Causes of Action against the International UA in Counts III and IV, not as the basis for the entirely separate Causes of Action pled against Local 91 in Counts I and II of the Complaint," noting that only the counts

against the International Union incorporate ¶ 17 of the Complaint. (Doc. 201 at 31).

Plaintiffs' eleventh-hour attempts to re-write and expand the Complaint are wholly unconvincing, and the plain words of the Complaint belie them. First, ¶ 17 states expressly that the SCMMA governs referral rights "that are the subject of this action." In context, 'this action" can only mean "this lawsuit," not "some (but not all) of the causes of action this Complaint will later state." Second, after establishing that the SCMMA creates a referral process that Local 91 uses, the Complaint alleges that the Plaintiffs "were interested in and qualified for the foreman, general foreman and other leadership positions that were filled on the basis of Local 91's referral process"—that is, the referral process created by the SCMMA and just described in the preceding paragraphs. (Doc. 89 at ¶ 24). The Complaint nowhere alleges that Local 91 made referrals not governed by the SCMMA, that Plaintiffs were interested in or qualified for such referrals, or that Local 91 denied such referrals to Plaintiffs.

Paragraphs later, the Complaint likewise alleges that Plaintiffs have knowledge of Local 91's referral criteria based on, *inter alia*, "Local 91's referrals to D&Z and other contractors pursuant to the SCMMA." (Doc. 89 at ¶ 31). Yet again, the Complaint alleges that "Local 91's authority to refer its members to contractors of the Southern Company for appointment to foremen, general foremen

18

and other leadership positions is based on the powers the Defendant International UA delegated to it pursuant to the SCMMA." (Doc. 89 at ¶ 48). The Complaint describes no other referral power under which Local 91 acted when it allegedly discriminated against Plaintiffs.

Plaintiffs' disparate impact count against Local 91 begins by stating that "Local 91's referral and selection criteria set forth in Paragraphs 19-46 of this Complaint have had disparate impact on the Plaintiffs." (Doc. 89 at ¶ 70). So, even under Plaintiffs' hyper-technical approach of considering which paragraphs each cause of action expressly incorporates, the disparate impact count relies on factual allegations specific to the SCMMA in Paragraphs 24 and 31. Likewise, Plaintiffs' disparate treatment claim expressly incorporates Paragraphs 19-46, stating that the facts set forth therein "constitute disparate treatment of the Plaintiffs." (Doc. 89 at ¶ 80). Thus, both Plaintiffs' remaining causes of action against the Union Defendants expressly rely on allegations specific to referrals governed by the SCMMA and fail to allege discrimination in any other referrals. Because the Complaint states claims only regarding referrals that Local 91 made under the SCMMA, the court will also grant the Union Defendants' motion as to any claims arising out of referrals not covered by the SCMMA.

**Conclusion**

In all four of its aspects, the Union Defendants' motion seeks not to narrow the case but to prevent its expansion by holding Plaintiffs to their own allegations. Plaintiffs have been unable in their response to point to facts *pled in the Complaint* sufficient to render plausible any claims based on (1) referrals where Local 91 did not designate anyone as its nominee for foreman; (2) any contractors' selections of someone other than Plaintiffs as a foreman where the employee who made the hiring decision was a member of Local 91; (3) any contractors' selection of foremen without seeking a referral for the foreman position from Local 91; and (4) referrals to job locations not covered by the SCMMA. The court therefore will grant the Union Defendants' Motion for Judgment on the Pleadings and order the parties to conduct discovery consistent with the rulings in this Memorandum Opinion concerning the scope of the case.

**DONE** and **ORDERED** this 9th day of May, 2023.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE