### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **RONALD KING, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| **v.** ] | **Case No.: 2:19-cv-1115-ACA** |
| ] | |
| **UA LOCAL 91, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

### MEMORANDUM OPINION

Defendant Day & Zimmerman NPS, Inc., is a union contractor that hires Local 91 union welders and pipefitters on a temporary basis. Two Local 91 welders, Plaintiffs Nolan Jones and Christopher Samuel, allege they were retaliated against after they complained of racial discrimination at DZ in violation of Title VII of the Civil Rights Act of 1964. DZ moves for summary judgment. (Doc. 297).[1]

Because DZ has established that the relevant decisionmakers had no knowledge of Plaintiffs' complaints of racial discrimination, the court **WILL GRANT** DZ's motion for summary judgment. (*Id.*).

---

[1] Messrs. Jones and Samuel, along with other Local 91 members, also brought employment-discrimination claims against Local 91 and its parent union; the court will address those defendants' motions for summary judgment separately.

## I.    BACKGROUND

In deciding a motion for summary judgment, the court "view[s] all evidence in the light most favorable to the nonmoving party and draw[s] all justifiable inferences in that party's favor." *Thompson v. Alabama*, 65 F.4th 1288, 1297 (11th Cir. 2023) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to Messrs. Jones and Samuel. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

DZ hires Local 91 pipefitters and welders on a temporary basis to complete projects at power generation facilities. (*See* doc. 89 ¶ 5; doc. 89-1 at 2, 13). Messrs. Jones and Samuel are Local 91 members who have been working on and off for DZ for over ten years. (Doc. 298 at 9 ¶ 5, 12 ¶ 29; doc. 328 at 7–8; *see* doc. 297-3 at 4; doc. 297-18 at 2). The remaining facts are specific to each plaintiff and are discussed in the analysis of that plaintiff's claim.

## II.    DISCUSSION

DZ moves for summary judgment on Count Five. (Doc. 297). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). The court first addresses the manner in which Plaintiffs' opposed summary judgment and then considers the merits of the parties' arguments.

       1.  Plaintiffs' Response Brief.

Plaintiffs filed a thirty-five-page brief opposing summary judgment. (Doc. 328). The initial order in this case directs a party opposing a motion for summary judgment to provide facts that it alleges are undisputed and require denial of summary judgment. (*See* doc. 18 at 18). The initial order also requires that each statement of fact be supported by its own evidentiary citation, and that all facts in the argument section of the brief be included in the statement of facts. (*Id.* at 16, 18 n.3). Plaintiffs included in their brief a twenty-page statement of allegedly undisputed material facts. (Doc. 328 at 10–30).

In the argument section of their brief, Plaintiffs predominately cite their allegedly undisputed material facts instead of citing the evidentiary record. (*E.g.*, *id.* at 33–34, 38–39). In at least one instance, the undisputed facts Plaintiffs cited provided no support for the fact asserted in the argument. For example, Plaintiffs argue that there is "direct evidence that [Mr.] Samuel expressed his opposition to DZ's on-going racial discrimination to Price and Vick face-to-face in May 2018." (*Id.* at 34). To support that proposition, Plaintiffs cite twenty allegedly undisputed material facts, which span seven pages of its brief. (*Id.* at 34; *see* doc. 328 at 20–21 ¶¶ 33–37, 23–27 ¶¶ 42–56). None of those citations support the proposition:

paragraph thirty-four alleges "Vedder and Price [were told] face-to-face that [Mr. Samuel] opposed such harassment and retaliation" but it makes no mention of Mr. Vick. (*Id.* at 20 ¶ 34).

A court is "not required to ferret out delectable facts buried in a massive record." *See Chavez v. Sec'y of Fla. Dep't of Corrs.*, 647 F.3d 1057, 1061 (11th Cir. 2011). When this citation style is material to Plaintiffs' arguments, the court will say so in its analysis of the merits. But as a general matter, the court notes that it has expended significant resources deciding this motion because of Plaintiffs' failure to cite particular parts of the evidentiary record as required by the court's initial order and the Federal Rules of Civil Procedure. (*See* doc. 18 at 8); Fed. R. Civ. P. 56(c)(1).

2.  DZ's Motion for Summary Judgment.

Because Messrs. Jones and Samuel bring the same claim, Title VII retaliation, the court will discuss the legal standard once. "Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (quoting 42 U.S.C. § 2000e–3(a)). An employee may prove retaliation "with any circumstantial evidence that

creates a reasonable inference of retaliatory intent." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023).

To survive summary judgment, Messrs. Jones and Samuel "must present a story, supported by evidence, that would allow a reasonable jury to find that the employer engaged in unlawful retaliation against the employee." *Id.* at 1311. Although the court draws all reasonable inferences in the plaintiffs' favor, those inferences must "be based only on evidence—not on speculation." *Id.* (quotation marks omitted).

### a. Mr. Jones's Retaliation Claim

In Count Five, Mr. Jones alleges that he filed an EEOC charge alleging racial discrimination against DZ in January 2018, and DZ terminated him three months later in retaliation for filing the charge. (Doc. 89 ¶¶ 147–48 ("[Mr. Jones was] discriminated and retaliated against by D&Z due to [his] (1) race (African American); and (2) retaliation for filing [his] EEOC Charge[] . . ."); *see* doc. 297-6 at 27). His employment history with DZ during this period was as follows: in December he was laid off, in January he filed his charge, in February he was rehired, and in April he was terminated for "irregular attendance." (*See* doc. 298 at 9–10 ¶¶ 7–8, 11–12; doc. 328 at 7; *see also* doc. 297-5, doc. 297-8).

DZ moves for summary judgment for three reasons. First, DZ argues that Mr. Jones failed to show a causal connection between his protected activity and his

termination because the decisionmaker for his termination (Mr. Winnett) did not know he filed an EEOC charge. (Doc. 298 at 18). Second, DZ argues Mr. Jones failed to show a causal connection because he was rehired *after* he made his EEOC charge. (*Id.* at 20). Third, DZ argues Mr. Jones has not created a genuine dispute of material fact about pretext. (*Id.* at 22).

Although Mr. Jones references the *McDonnell Douglas* standard, he primarily argues he has presented a convincing mosaic of retaliation that precludes summary judgment. (*See* doc. 328 at 31–39). Because the court finds he has not created a triable issue of fact regarding causation, the court will not decide if he could also survive under *McDonnell Douglas*'s burden shifting framework because his claim would fail for the same reason. *See Berry*, 84 F.4th at 1310.

DZ argues it is entitled to a summary judgment because Mr. Jones failed to show that Mr. Winnett, whom it views as "the ultimate decisionmaker" for Mr. Jones's termination, knew about the EEOC charge when he terminated Mr. Jones. (Doc. 298 at 18). Mr. Jones argues that Michael Aaron, a supervisor subordinate to Mr. Winnett who signed his termination slip, was the decisionmaker. (*See* doc. 328 at 15–16 ¶¶ 20–21; *id.* at 33–34; *see also* doc. 297-10 at 32). The court need not decide who was in fact the decisionmaker because even if the court accepts Mr. Jones's argument that Mr. Aaron was the decisionmaker, summary judgment remains proper.

Assuming for purposes of summary judgment that Mr. Aaron was the decisionmaker, Mr. Jones must show Mr. Aaron knew about the EEOC charge when he terminated him; although he can establish that knowledge through circumstantial knowledge, he cannot do so through mere speculation. *See Martin v. Fin. Asset Mgmt. Sys.*, 959 F.3d 1048, 1053 (11th Cir. 2020). Mr. Jones invites the court to draw the inference that Mr. Aaron knew about the EEOC charge because he was not deposed in this case and therefore never denied knowledge. (Doc. 328 at 33). That is not a reasonable inference because it is based on speculation, not evidence. *Berry*, 84 F.4th at 1311. Mr. Jones make no other argument that *Mr. Aaron* had knowledge of his protected activity. (*See* doc. 328 at 33–34). Therefore, because Mr. Jones has not created a triable issue of fact regarding whether Mr. Aaron knew about his EEOC charge before he terminated him, he cannot show a relationship between his protected activity and his termination. *See Martin*, 959 F.3d at 1053–54.

Accordingly, the court **WILL GRANT** DZ's motion and **WILL ENTER SUMMARY JUDGMENT** on Mr. Jones's claim because Mr. Jones does not create a triable issue of fact as to causal connection between his firing and his protected activity. (Doc. 297).

### b. *Mr. Samuel's Retaliation Claim*

Count Five alleges that in February 2019,[2] Anterial Gray, a general foreman, promoted Mr. Samuel to a vacant foreman position. (Doc. 89 ¶ 141). After Mr. Samuel began orientation for the foreman position, Matt Vick, a craft supervisor, selected someone else (Anthony Mabry) for the foreman role and removed Mr. Samuel as foreman. (*Id.* ¶ 142). Mr. Samuel alleges Mr. Vick removed him from the foreman position in retaliation for filing an EEOC charge. (*Id.* ¶¶ 139, 140).

Mr. Samuel's response brief, however, seeks to expand that claim by relying on alleged protected activity and adverse employment actions not pleaded in the complaint. (*See* doc. 328 at 34–39). As is relevant here, Mr. Samuel had the following employment history with DZ:

In January 2018, Mr. Samuel filed an EEOC charge against DZ and was laid off in May 2018. (Doc. 298 at 13 ¶¶ 36, 37–38; doc. 328 at 8–9; doc. 297-5; *see* doc. 297-3 at 6). The month he was laid off, he filed a second EEOC charge alleging his layoff was retaliatory. (Doc. 298 at 14 ¶ 41; doc. 328 at 9; *see* doc. 297-21 at 80). One year later, in January 2019, DZ rehired him. (Doc. 298 at 14 ¶¶ 43; doc. 328 at

---

[2] The complaint and the summary judgment briefing do not include a date; however, Mr. Samuel's EEOC charge identifies February 19, 2019, as the date of discrimination and it is undisputed he began working at this plant on February 5, 2019. (*See also* doc. 297-30 at 2–3; doc. 298 at 15–47; doc. 328 at 9; doc. 297-27).

9; doc. 297-21 at 19; doc. 297-18 at 4). About a month later, Mr. Gray told Mr. Samuel he could be foreman and Mr. Vick selected someone else and removed him from the role—this is the adverse action pleaded in the complaint. (*See* doc. 89 ¶ 139; doc. 297-21 at 23–24; doc. 297-28 at 13). In late March, shortly after he was not made foreman, he amended again his previous EEOC charges of discrimination. (Doc. 298 ¶ 53; doc. 297-30; doc. 297-21 at 91). In April 2019, he was terminated for irregular attendance. (Doc. 298 ¶ 56; doc. 297-21 at 26).

Despite that circuitous employment history, the complaint alleges only that his removal from the foreman position in 2019 was retaliation for his prior EEOC charges; it makes no allegation about 2018 conduct or his April 2019 termination. (Doc. 89 ¶¶ 139–40, 145; *see id.* ¶ 144). And that is how the court previously construed the claim as well. (Doc. 121 at 10) ("D&Z fired him as *foreman* on a jobsite [in retaliation for protected activity]."). Mr. Samuel was fired months before he filed his initial complaint and two years before he filed his operative complaint. (Docs. 1, 89). He had three opportunities to plead the additional adverse employment actions he identifies in his brief and in his operative complaint. (Doc. 89 ¶¶ 139–46; doc. 328 at 34–39). Although Mr. Samuel testified in his deposition that he thought his April 2019 termination was retaliatory, "the discussion of a potential claim in a deposition does not satisfy the requirement of [Federal] Rule [of Civil Procedure] 8(a)." (Doc. 297-21 at 90); *Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006),

*overruled on unrelated grounds as recognized in City of S. Miami v. Governor*, 65

F.4th 631, 636 (11th Cir. 2023). To allow Mr. Samuel to expand his claim would

impermissibly allow him to amend his complaint at summary judgment. *See MSP*

*Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1319 (11th

Cir. 2023).

Mr. Samuel argues he does not have to plead all facts that support a claim and

that a claim can be supported by the full "mosaic" of facts that preceded the claim.

(*See* doc. 328 at 40–41). That is true. But Mr. Samuel cannot survive summary

judgment by arguing he has created a genuine dispute of material fact about adverse

actions not pleaded in the complaint. (*See e.g., id.* at 34–39); *see also Brown*, 440

F.3d at 1266. Therefore, his retaliation claim is limited only to his removal from the

foreman position in 2019.

DZ moves for summary judgment on that claim because Mr. Vick, the

relevant decisionmaker, testified that he did not know Mr. Samuel complained of

racial discrimination until after the lawsuit was filed. (*See* doc. 298 at 25; doc. 297-

28 at 13). To establish causation between protected activity and an adverse

employment action, the plaintiff must demonstrate that "the decisionmaker actually

knew about the employee's protected expression." *Martin*, 959 F.3d at 1053.

To rebut Mr. Vick's denial, Mr. Samuel argues there is direct evidence that

Mr. Samuel complained to "[Mr.] Vick face-to-face in May 2018." (Doc. 328 at 34).

He cites twenty of his allegedly undisputed material facts to support that fact. (*See id.*; *id.* at 20–21 ¶¶ 33–37, 23–27 ¶¶ 42–56). But none of those facts state that Mr. Samuel ever complained to Mr. Vick face-to-face. (*See id.*). Mr. Samuel also argues that Mr. Vick's lack of knowledge of the EEOC charge "is disputed by substantial evidence." (*See id.* at 33). In support of that proposition, Mr. Samuel cites eleven allegedly undisputed material facts, only two of which—facts four and six—appear relevant to Mr. Samuel. [3] (Doc. 328). The court will address each fact in turn.

First, fact four states Mr. Vick had direct knowledge of Mr. Samuel's protected activity. (*Id.* at 10 ¶ 4). Mr. Samuel cites seven *other* allegedly undisputed material facts to support that position. (*Id.*). None of those facts state that Mr. Vick had knowledge of Mr. Samuel's EEOC charge when he removed him as foreman. (*See* doc. 328 at 24–26 ¶¶ 45–51). Mr. Samuel also cites paragraphs twelve through eighteen of his declaration. (*See* doc. 328 at 10 ¶ 4). None of those paragraphs state that Mr. Vick had knowledge of Mr. Samuel's *EEOC charge*. (*See* doc. 326-1 at 6–10 ¶¶ 12–18).

One cited paragraph in the declaration includes an allegation that when Mr. Samuel learned Mr. Gray may not be able to select his own foreman, he "express[ed to Mr. Gray his] opposition to any such disparate treatment" of

---

[3] Because the sentence makes the same argument on behalf of Mr. Jones, some of the citations are not related to Mr. Samuel. (*See* doc. 328 at 33).

Mr. Gray; Mr. Gray then told Mr. Samuel that he—*i.e.*, Mr. Gray—told Mr. Vick about Mr. Samuel's comments. (*See id.* at 8–9 ¶ 16). To the extent Mr. Samuel argues that is evidence Mr. Vick had knowledge of his opposition (*see* doc. 328 at 33), he has not pleaded that opposition—*i.e.*, opposing potential mistreatment of Mr. Gray—was the reason he was removed from the foreman role; instead, he pleaded unambiguously that he was removed from the foreman position because he filed an EEOC charge (*e.g.* doc. 89 at 59 ¶ 139 ("Matt Vick, intervened to remove [Mr.] Samuel in retaliation for the EEOC charges he filed . . ."); *id.* at 59 ¶ 140 ("[Mr.] Samuel was taken out of the foreman job because he filed an EEOC Charge. There was no reason other than [Mr.] Samuel's race and EEOC Charge for not keeping him in the foreman job."); *id.* at 60 ¶ 142 ("Previously, the general foreman had always selected the foreman under them, but Plaintiff Samuel was treated differently because he had recently filed EEOC Charges that opposed racial discrimination in filling such positions."); *id.* at 61 ¶ 145 (same)). And Mr. Samuel cannot amend his complaint at summary judgment. *See MSP Recovery Claims, Series LLC*, 60 F.4th at 1319.

Second, fact six asserts the court can draw the reasonable inference that Mr. Vick knew about DZ's investigation and response to Mr. Samuel's EEOC charge. (Doc. 328 at 11 ¶ 6). He cites portions of another supervisor's deposition, who never mentions Mr. Vick (*see* doc. 297-11), and about a dozen paragraphs of

his own declaration, which make no mention of Mr. Vick's role or knowledge in any investigation after he filed his EEOC charge (doc. 326-1 at 3–6 ¶¶ 5–10; 7–10 ¶¶ 13–19).

Because Mr. Samuel has offered no evidence that Mr. Vick had knowledge of his EEOC charge when he removed him as foreman, he cannot show a relationship between his protected activity and his termination. *Martin*, 959 F.3d at 1053–54. Although Mr. Samuel also argues that temporal proximity creates a genuine issue of material fact on causation (doc. 328 at 34–37), it cannot do so if evidence that the decisionmaker had no knowledge of protected conduct is left unrebutted, *see Martin*, 959 F.3d at 1054 ("After all, a decision maker cannot have been motivated to retaliate by something unknown to him, whether or not the two events happened close in time.") (quotation marks omitted).

Accordingly, the court **WILL GRANT** DZ's motion and **ENTER SUMMARY JUDGMENT** on Mr. Samuel's claim because Mr. Samuel does not create a triable issue of fact as to causal connection between his firing and his protected activity. (Doc. 297).

### III.   CONCLUSION

The court **WILL GRANT** DZ's motion for summary judgment on Messrs. Jones's and Samuel's claims. (Doc. 297).

**DONE** and **ORDERED** this August 7, 2024.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE